UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHRISTIAN CILIEZAR,**

    Plaintiff,

v.                                   Case No: 5:25-cv-371-WFJ-PRL

**SHANNON D. WITHERS, et al.,**

    Defendants.

## ORDER

Plaintiff, Christian Ciliezar ("Plaintiff"), who is proceeding *pro se,* filed this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 1). Plaintiff sues six staff members at FCC Coleman USP I: Warden Shannon P. Withers, the Medical Director (John Doe #1), On-duty Officer C. Levin, Medical Staff Supervisor George, Nurse Doe, and Dr. Boodoo; and also names the Federal Bureau of Prisons and FCC Coleman USP I as defendants. (Doc. 1 at 6–10). Plaintiff was granted leave to proceed in forma pauperis. (Doc. 4).

### Statutory Screening of Prisoner Complaints

Pursuant to 28 U.S.C. § 1915A(a), federal courts are obligated to conduct an initial screening of certain civil suits brought by prisoners to determining whether they should proceed. Upon review, a court is required to dismiss a complaint (or any portion thereof) in the following circumstances:

>  (2) Grounds for Dismissal.–On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>>
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). In addition, 28 U.S.C. § 1915(e) directs courts to dismiss actions which are frivolous, malicious, fail to state a claim for relief, or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). The Court must read a plaintiff's *pro se* allegations in a liberal fashion. *Haines v. Kerner*, 404 U.S. 519 (1972). Although federal courts give liberal construction to *pro se* pleadings, courts "nevertheless have required them to conform to procedural rules." *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (quotation omitted).

## **Claims**

In his Complaint, Plaintiff, a federal inmate housed at FCC Coleman USP I, claims he sustained a serious injury to his right hand, at the base of first metacarpal. (Doc. 1 at 12). Plaintiff immediately reported his injury to the On-Duty Officer who then reported him to the Medical Department. *Id*. Plaintiff was seen by Nurse Doe who "failed to properly treat my injury by refusing to explore the severity" of the injury and refused Plaintiff's requests for x-rays and to be sent to the Emergency Room. *Id*. Plaintiff was advised to submit a "Request for Medical Assessment" form. Plaintiff submitted his form to Dr. Boodoo, but he failed to get any response or follow-up from Dr. Boodoo. *Id*. He alleges that Nurse Doe and Dr. Boodoo's failure to treat him "were

at the instruction of Medical Staff Supervisor George" who was following "policy orders from the facility Warden, Shannon P. Withers." *Id*. at 13.

On or around September 21, 2024, Plaintiff suffered another serious injury to his right hand at the fourth metacarpal. (Doc. 1 at 14). Plaintiff reported the injury to the On-Duty Officer and was then taken to the Medical Department. *Id*. After an initial assessment, Plaintiff "was immediately" taken to an off-site Emergency Room. X-rays revealed a "primary closed displaced fracture of fourth metacarpal bone of right hand" and a "closed old fracture with callus formation and partial healing at the base of the first metacarpal bone." *Id*. The hospital's medical team recommended a treatment plan that included a plan of transfer to a hand surgeon. *Id.* Plaintiff wanted to follow that plan, but Transporting Officer C. Levin told him that he was not going to be permitted to be transferred. *Id*. The Warden and Medical Director denied the transfer due to security reasons and stated that an out-patient surgical follow-up would be scheduled "for another time." *Id*. at 14–15. Levin signed Plaintiff's release paperwork "against medical advice" and Plaintiff was returned to the prison without treatment. *Id*. at 15. Plaintiff claims that he still has not been scheduled for a surgical follow-up. Medical Staff Supervisor George is responsible for scheduling these types of appointments but has failed to do so for Plaintiff. *Id.*

Plaintiff has been subjected to "constant, continuous pain in my hand that has made daily tasks such as writing, exercising, typing, and much more, nearly impossible." *Id*. at 15. Due to the lack of medical treatment his hand has healed "improperly", and he has lost full functionality of it. *Id.*

### Discussion

Plaintiff sues eight federal defendants under *Bivens*, alleging violations of his Eighth Amendment rights.

**Defendants Federal Bureau of Prisons and FCC Coleman USP I**

As an initial matter, Plaintiff sues the Federal Bureau of Prisons and FCC Coleman USP I; however, a *Bivens* claim only applies to federal employees in their individual capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–71 (2001). Under *Bivens*, an implied private right of action exists for damages against federal officers alleged to have violated a citizen's constitutional rights. *Id.* at 66. However, because the objective of a *Bivens* remedy is to deter officers' violations, agencies themselves cannot be sued under this framework. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994). Accordingly, Plaintiff's claim against the Federal Bureau of Prisons and FCC Coleman USP I will be dismissed.

**Individually Named Defendants**

In *Bivens*, the Supreme Court recognized an implied right of action for damages against federal officials sued in their individual capacities for Fourth Amendment violations. *Id.* at 394–97. The Court extended *Bivens* to a Fifth Amendment claim against a congressman who fired his secretary based on her sex, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979), and an Eighth Amendment claim against prison officials for failure to provide medical treatment, *Carlson v. Green*, 446 U.S. 14, 19–23 (1980). After *Bivens*, *Davis*, and *Carlson*, the Supreme Court "adopted a far more cautious course"

before implying causes of action, and thus, "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'" *Ziglar v. Abbasi*, 582 U.S. 120, 132, 135 (2017) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Supreme Court "has made [it] clear that expanding" *Bivens* is now "disfavored." *Ziglar*, 582 U.S. at 135 (citation omitted).

A two-step inquiry determines whether a claim is actionable under *Bivens*. First, "ask whether the case presents a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the [Supreme] Court [] implied a damages action." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (cleaned up). "[F]or a case to arise in a previously recognized *Bivens* context, it is not enough that the case involves the same constitutional right and 'mechanism of injury[]'" as a previously recognized context. *Johnson v. Terry*, 112 F.4th 995, 1006 (11th Cir. 2024) (citing *Ziglar*, 582 U.S. at 138–39); *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). "The inquiry is 'whether the two cases have any relevant differences, not whether they are mostly the same.'" *Johnson v. Terry*, 112 F.4th at 1014. Even a small difference can present a new context. *See id*.

Second, if the case presents a new context, a *Bivens* remedy is "unavailable if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 1007 (quoting *Egbert*, 596 U.S. at 492). "If there is even a single 'reason to pause before applying Bivens in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. "One notable special factor is the existence of an

alternative remedial structure." *Johnson v. Terry*, 112 F.4th at 1014–15. Importantly, the Eleventh Circuit recently ruled that the existence of the Federal Bureau of Prisons' administrative remedy program, alone, counseled against extending *Bivens* to a prisoner's claim. *Id*. at 1015–17; *see also Malesko*, 534 U.S. at 74.

Another factor counseling hesitation is legislative action suggesting that Congress does not want a damages remedy. *Ziglar*, 582 U.S. at 148. Specifically, as the Supreme Court noted in *Ziglar*:

> Some 15 years after *Carlson* [*v. Green*] was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion requirements would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id*. at 148–49 (internal citations omitted). As other courts have recognized, Congress has been active in prisoner's rights and has not created a damages remedy against an individual officer. *See, e.g., Berry v. Bureau of Prisons*, No. 5:20-cv-424-KKM-PRL, 2021 WL 4166181, at *3 (M.D. Fla. July 27, 2021) (explaining that the choice by Congress to not create a damages remedy for cases like this one "forecloses this [c]ourt from taking it upon itself to legislate monetary damages for constitutional claims where the legislative branch elected not to do so"); *Dugan v. Scott*, No. 5:13-cv-235-Oc-32PRL, 2019 WL 4737609, at *5 (M.D. Fla. Sept. 27, 2019) ("[g]iven Congress's active role in the area of prisoner rights, this factor causes the Court to 'hesitate' and weighs against

extending [the] *Bivens* remedy in this case"); *McRae v. Lockett*, No. 5:17-cv-299-Oc-02PRL, 2019 WL 2303264, at *6 (M.D. Fla. May 30, 2019) ("While Congress's failure to create a damages remedy is not definitive, the fact remains that Congress has been active in the area of prisoners' rights and has not created a damages remedy.").

### Eighth Amendment

Plaintiff claims the denial of medical treatment constituted deliberate indifference to his serious medical needs.

The Supreme Court extended *Bivens* to one Eighth Amendment claim for deliberate indifference to a prisoner's serious medical need. *See Carlson*, 446 U.S. at 19–23; *see also Ziglar*, 582 U.S. at 138 (declining to extend *Bivens* to a Fifth Amendment conditions of confinement claim); *Egbert*, 596 U.S. at 486 (declining to extend *Bivens* to an excessive force claim against a Border Patrol agent). In *Carlson*, prisoner was housed — against the advice of doctors and despite his known medical condition — at a facility with inadequate medical care. *Carlson*, 446 U.S. at 16, 17 n.1. Prison officials provided the prisoner inadequate medical care after an asthma attack, administered contra-indicated medication, provided an inoperative respirator that impeded his breathing, and did not timely transfer him to an outside hospital. *Id*. at 17. The officials' actions resulted in the prisoner's death. *Id*.

Plaintiff's deliberate indifference claims allege that officials interfered with his medical treatment resulting in a complete lack of and/or delayed care. In *Johnson v. Terry*, the Eleventh Circuit found a plaintiff's claim that "involve[d] prison officials,

medical officers in the prison, and the deprivation of 'medically necessary assistance[,]'" did not arise in the "same context" as *Carlson* because the two cases shared only "superficial similarities." *Johnson v. Terry*, 112 F.4th at 1014. Like the plaintiff in *Johnson v. Terry*, Plaintiff does not present a claim that he "died from an asthma attack when officials failed to provide the medical care required." *Id*. Consequently, the Eleventh Circuit's reasoning in *Johnson v. Terry* applies equally to this action and Plaintiff's deliberate indifference claim presents a new *Bivens* context.

In *Johnson v. Terry*, the Eleventh Circuit found the Federal Bureau of Prison's administrative remedy program was an alternative remedy for an Eighth Amendment deliberate indifference claim, and the program's existence counseled against extending *Bivens* to Johnson's claim. *Id*. at 1014–17. The Federal Bureau of Prison's administrative remedy program similarly provided a remedy to Plaintiff. Therefore, Plaintiff's Eighth Amendment claims are not cognizable under *Bivens* and are due to be dismissed.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiff's Complaint (Doc. 1) is **DISMISSED** for failure to state a claim.
2. To the extent Plaintiff wishes to cure the deficiencies of his Complaint, he may file an Amended Complaint, on the Court's approved form, within **TWENTY-ONE days** from the date of this Order.[1] The failure to

---

[1] Plaintiff should note that an amended complaint supersedes the filing of the initial complaint and becomes the operative pleading. *Krinks v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1201 (11th Cir. 2011). Thus, Plaintiff's amended complaint must be complete, including all related claims he wishes to raise, and must not refer to the initial complaint.

file the Amended Complaint within the allotted time will result in the dismissal of this case without further notice.

3. The **Clerk** shall send Plaintiff a blank civil rights complaint form.

**DONE** and **ORDERED** in Tampa, Florida, on October 23, 2025.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**Copies furnished to**:
Pro Se Party